J-S10003-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| BRIAN J. METZ AND DANAE MENDEZ-METZ | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 1371 MDA 2024 |
| DANIEL L. ELSESSER AND PAMELA A. ELSESSER | : | |
| | : | |

Appeal from the Judgment Entered November 21, 2024
In the Court of Common Pleas of Mifflin County Civil Division at No(s):
2022-00872

BEFORE:  BOWES, J., OLSON, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.:                    **FILED: APRIL 23, 2025**

Brian J. Metz and Danae Mendez-Metz ("Plaintiffs") appeal from the judgment entered on the court's order granting Daniel L. Elsesser and Pamela A. Elsesser ("Defendants") a right of way over part of Plaintiffs' property.[1]  We affirm.

By way of background, Plaintiffs and Defendants are adjacent neighbors on Walnut Road in Derry Township, Mifflin County.  Plaintiffs own a flag lot, which is composed of "a parcel of land shaped like a flag [on a pole], with a

---

[1] Plaintiffs filed the instant notice of appeal before the pertinent order was reduced to judgment.  Since that has since been corrected, "we will consider the appeal filed after the entry of judgment." **Jones v. Rivera**, 866 A.2d 1148, 1149 n.1 (Pa.Super. 2005) (cleaned up); **see also** Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").

narrow strip providing access to a public street or waterway and the bulk of the property containing no frontage." ***Bartkowski v. Ramondo***, 219 A.3d 1083, 1085 n.1 (Pa. 2019) (cleaned up). The western and northern boundaries of Defendants' lot abut the narrow portion of Plaintiffs' lot, *i.e.*, the so-called flagpole. Defendants have a right of way along this boundary line. This controversy began when Defendants sought to expand their driveway into Plaintiffs' flagpole. Defendants and the trial court centered the right of way upon the property line separating the flagpole portion of Plaintiffs' lot from the western side of Defendants' lot, whereas Plaintiffs insist that the property line is actually the western edge of the right of way, which they argue lies entirely within Defendants' lot. For ease of visualization, we offer these simplified drawings of the disputed area:[2]



___

[2] These diagrams are neither to scale nor a full and accurate representation. We offer them only as supplemental aids in reading this memorandum.

The trial court accurately summarized the history regarding the creation of these lots thusly:

> Both Plaintiffs' and Defendants['] properties are part of the South Hills Addition subdivision created by John Wilson pursuant to a plan of lots dated July 27, 1978, revised December 30, 1978, and recorded in June of 1979 (hereinafter "1978 South Hills Plan"). Pursuant to the 1978 South Hills Plan, the subdivision included a [fifty] feet wide road called Walnut Lane which extended along the west side of Defendants' property, which is referred to as Lot 17 on the plan.

Trial Court Opinion, 5/10/24, at 1-2 (some articles omitted). Plaintiffs' current property was then located within a northern portion of the plan, surrounding the area where Walnut Lane was proposed to connect Walnut Road and Oak Ridge Road, and was designated "future lots."[3]

_____

[3] We altered Plaintiffs' Exhibit 5 to give context to the placement of the lots:



Despite the initial intent, Walnut Lane was never constructed. Instead, the Township of Derry paved Walnut Road and terminated it in a cul-de-sac by what would become the parties' properties. In that vein:

> [Lots 17 and 16] were first conveyed from the Wilsons to Harold and Sondra Goss in April of 1979. Following an unbroken chain of title, the lots were eventually conveyed to Defendants from Linda S. Benner by deed dated June 25, 2003. The deed description of Lot 17 has remained the same: "BEGINNING at a nail in the center of Walnut Lane; thence along the center line of Walnut Lane, North 31 degrees 21 minutes 31 seconds East 185.37 feet to an iron pin[.]" The description also includes the language "and containing 1.25 acres, including the road right-of-way."

*Id*. 2 (some articles omitted).

Lot 16, which was previously owned by Defendants but has since been deeded to their daughter, is adjacent to the southwest border of Lot 17, as depicted on our abridged drawing. Based upon where the township placed the cul-de-sac, Lot 16 had access to the public road but Lot 17 did not. Shortly before Defendants acquired both of these properties, the then-owner of the two lots planned to transfer a portion of Lot 16 to Lot 17, thereby expanding the southwestern portion of Lot 17 and granting it direct access to the cul-de-sac. *See* N.T. Trial, 4/9/24, at 12 (Defendants' Exhibit 5, Lot Addition Plan for Linda S. Benner, 10/31/00). This expansion did not affect the Walnut Lane right of way at issue in this case. Nonetheless, for clarity, we note that Defendants initially purchased both lots and, in 2020, re-deeded Lot 17 to themselves in accordance with that addition plan. Thereafter, they granted

the deed to Lot 16 to their daughter. Notwithstanding testimony surrounding its acrimonious development, the underlying dispute does not concern Lot 16.

Plaintiffs purchased their lot, the flagpole portion of which runs adjacent to Lot 17, in 2012. The deed conveying the property "refers to the premises conveyed as Lot No. 2 on a plan of lots prepared by Colony & Company, recorded on March 27, 2001 [('Colony Plan')]." Trial Court Opinion, 5/10/24, at 3. The deed does not mention the right of way, but the referenced Colony Plan places the right of way thusly:[4]



Walnut Lane Right of Way

Plaintiffs' Lot (Lot No. 2)

Defendants' Lot (Lot 17)

Lot 16

Revised Property Line between Lots 17 & 16

---

[4] For ease of reading, we have erased extraneous information and more clearly labelled the properties and right of way. Since the Colony Plan did not adjust the southwestern border of Lot 17 adjacent to Lot 16 following the land transfer, we also corrected that.

In the autumn of 2022, Defendants advised Plaintiffs that they intended to elongate their driveway into a circle drive through part of the flagpole area of Plaintiffs' property within the Walnut Lane right of way, which Defendants maintained they in fact owned. In preparation, Defendants hired William Wright of Wright Land Surveying to prepare a survey in October 2022 ("Wright Survey"). As amplified by this Court, the Wright Survey provided:



**See** N.T. Trial, 4/9/24, at 12 (Defendants' Exhibit 8). Notably, the Wright Survey placed the right of way in the same location as the Colony Plan and the 2000 addition plan. **Id**. at 72.

Plaintiffs filed the underlying complaint in ejectment in December after Defendants cleared trees in the right of way potion of Plaintiffs' flagpole area to prepare for the expansion. They also sought an injunction, which the court preliminarily granted. Following a site visit and hearing wherein Plaintiffs called Dr. Mendez-Metz and Defendants offered Mr. Wright as an expert in land surveying, the court extended the injunction pending trial. The court continued the injunction, in part, because it "had become satisfied that, by virtue of subsequent planning and development, Lot 17 had become expanded so that the right-of-way known as Walnut Lane had become subsumed by an expansion of Lot 17." Trial Court Opinion, 5/10/24, at 2; **see also** Trial Court Opinion and Order, 7/11/23, at 5 (finding "that the recorded documents show Walnut Lane does not cross over Plaintiffs' property but rather is located on Defendants' property" (some articles omitted)). Further, it determined that the original roadway plan was abandoned by terminating Walnut Road at the cul-de-sac and enlarging Lot 17 over the original location of Walnut Lane. **See** Trial Court Opinion and Order, 7/11/23, at 6.

On April 9, 2024, the court held a bench trial. The parties agreed to submit as an exhibit at the nonjury trial the transcript and exhibits from the preliminary injunction hearing. In addition, the parties presented testimony from Dr. Mendez-Metz, Mr. Metz, Mr. Elsesser, Defendants' adult son, and Mr. Wright.

After taking the matter under advisement, the court concluded that its earlier determination was erroneous and instead adopted Defendants'

interpretation of the right of way. *Id*. Thus, it held that Defendants had a right-of-way for ingress and egress over the twenty-five-foot-wide portion of Plaintiffs' property situated adjacent to the western boundary of Defendants' property and that, consequently, Plaintiffs were not entitled to an injunction.

Plaintiffs filed a post-trial motion challenging the court's findings and asking it to reverse its ruling. Defendants submitted a brief in response and the court heard oral argument. Thereafter, the court denied the motion and this timely appeal followed. The trial court did not order Plaintiffs to file a concise statement pursuant to Pa.R.A.P. 1925(b), and none was filed. In lieu of a Rule 1925(a) opinion, the trial court referred us to the opinion accompanying its decision.

Plaintiffs present the following issues for our consideration:

A. Did the trial court abuse its discretion and err as a matter of law when it determined that the Walnut Lane right-of-way crossed over the flagpole portion of [Plaintiffs'] property?

B. Did the trial court abuse its discretion and err as a matter of law when it held that [Defendants'] lot did not have access to a public street except by crossing over [Plaintiffs'] property?

C. Did the trial court abuse its discretion and err as a matter of law when it refused to hold that developer's recording of the 1982 subdivision plan constituted an abandonment of the original plan to extend Walnut Lane beyond the cul-de-sac of the dedicated portion of Walnut Road?

Plaintiffs' brief at 4. Thus, we begin with the pertinent legal principles:

Our standard of review in non-jury cases is limited to: a determination of whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. Findings of the trial

judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion. When this Court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected.

*Landis v. Wilt*, 222 A.3d 28, 34 (Pa.Super. 2019) (cleaned up).

This case originated as an ejectment action, which is "filed by a plaintiff who does not possess the land but has the right to possess it, against a defendant who has actual possession" to ascertain "the immediate rights between plaintiff and defendant involved in that particular litigation." *Billig v. Skvarla*, 853 A.2d 1042, 1049–50 (Pa.Super. 2004) (cleaned up). "The crux of an ejectment action, therefore, rests with the plaintiffs' ability to identify, by a preponderance of the evidence, the boundaries of a parcel of land to which they are out of possession but for which they maintain paramount title." *Id*. at 1050-51 (cleaned up).

Insofar as Walnut Lane was not dedicated or developed as originally planned, we also consider the following. Generally, the public right to access a planned street will expire if it is not opened within twenty-one years. *See* 36 P.S. § 1961.

> However, there is a clear distinction between the public right of passage over dedicated streets and the individual rights of property owners involved in such dedication. As the consideration paid for the lots included the increased value imparted by the access to the land promised by the laid-out streets and alleys, while the public easement or right of use in such lanes or alleys is lost as the result of the passage of such time and lack of use, the purely **private** rights of easement of individual property owners in the plan of lots to use the alley or way are not extinguished.

*Landis*, 222 A.3d at 34–35 (cleaned up).  Furthermore:

> References to a plan contained in deeds make the plan a part of the deed or conveyance and constitute a dedication of the streets, alleys and ways shown on the plan, to the use of the purchasers as public ways.  Where a street called for a boundary in a deed is not a highway nor dedicated to public use, the grantee does not take title in fee to the center of it, but by implication acquires an easement, or right of way, over the lands.

*Potis v. Coon*, 496 A.2d 1188, 1192–93 (Pa.Super. 1985) (cleaned up).

Although framed as three issues, the crux of Plaintiffs' argument is that the trial court erred in determining that Defendants had a right of way over a portion of Plaintiffs' flagpole.  At bottom, they claim that the court erroneously centered the Walnut Lane right of way "on the common boundary line between the eastern side of the flagpole portion of [Plaintiffs' property] and the western side of [Defendants'] expanded Lot 17 . . . rather than the existing location on the recorded 1978 Plan."  Plaintiffs' brief at 23.  They insist that the Walnut Lane right of way ends before the cul-de-sac and that, therefore, the Colony Plan's depiction of its location is incorrect.  *Id*. at 14.  According to Plaintiffs' interpretation of the pertinent documents, the right of way exists wholly within Defendants' lot, to the east of the property line and not in the flagpole portion of Plaintiffs' property.  *Id*. at 17.  Alternatively, they contend that because Walnut Lane was abandoned, "no private right-of-way exists on the extension of Walnut Lane beyond the cul-de-sac[.]"  *Id*. at 21.

The trial court found otherwise:  "We do not agree that the depiction of Walnut Lane in the Colony Plan is erroneous.  To the contrary, Walnut Lane is

depicted to be exactly where it has been all along." Trial Court Opinion, 5/10/24, at 3. It continued:

> [E]ven though a failure to dedicate a road may extinguish the right of public access, the right of a private easement is unimpaired. In this regard, we agree with Defendants that our earlier order in this case mis-applied the holding in [**Landis**]. While **Landis** acknowledges, and was cited by us for, the proposition that the revision of a plan may result in the abandonment of rights in streets which were depicted on an earlier plan, the owners who purchased their lots pursuant to the earlier plan nonetheless retain their easement rights in the unopened streets.
>
> We underscore that the initial and subsequent deeds for Lot 17 describe the western boundary as being along the center line of Walnut Lane and the deed expressly includes the right-of-way in the acreage of the lot.

*Id*. at 4 (some articles and commas omitted).

Upon review of the certified record, we conclude that the court's factual findings regarding the location of the right of way are supported by competent evidence. The deeds for Lot 17 clearly identify the relevant property line and location of Walnut Lane based upon iron nails and pins. In completing the 2022 survey, Mr. Wright located an iron nail and iron rebar in the precise locations where the northern and southern ends of the centerline of Walnut Lane has been consistently depicted on surveys since the inception of the subdivision plan. Thus, the evidence bears out the court's conclusion that Walnut Lane, half of which runs the length of Plaintiffs' flagpole area, has not moved. Accordingly, we discern no abuse of discretion in how the court interpreted the salient records and testimony to determine the location of the right of way.

- 11 -

Finally, Plaintiffs assail the ruling based upon the court's statement that Defendants otherwise lacked access to the cul-de-sac. *See* Plaintiffs' brief at 19-20. However, any error in that regard is not fatal to the court's ruling as the court plainly acknowledged that necessity was not dispositive to its consideration of the issue before it.[5] Therefore, even if we agreed with Plaintiffs that the right-of-way is not necessary for Defendants to be able to connect Lot 17 to the public road, and the court erred in determining otherwise, we would have no reason to reverse the court's ultimate ruling since the finding of necessity had no bearing upon it.

_____

[5] *See* Trial Court Opinion, 5/10/24, at 4-5 ("While acknowledging that the issue is not controlling, the Defendants assert that the easement claimed is necessary for the full use of Lot 17. The easement provides for the means of ingress and egress along the western boundary of their property to the only public road to which there is now access. That having been said, contractual rights to the easement do not, in any event, depend upon a showing of prior use or necessity." (cleaned up)).

Based on the foregoing, we affirm the judgment entered on the order denying the Plaintiffs' injunction and granting Defendants a right of way over a portion of Plaintiffs' property.

Judgment affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/23/2025